UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

S. D., O/B/O T.N.B.,
(a minor),

                      **Plaintiff,**

vs.                                                5:20-cv-969
                                                     (MAD/DJS)

ANDREW M. SAUL, *Commissioner of Social*
*Security Administration*,

                      **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**OLINSKY LAW GROUP**                  **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorneys for Plaintiffs

**SOCIAL SECURITY ADMINISTRATION**    **AMY C. BLAND, AUSA**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff applied for Supplemental Security Income ("SSI") on behalf of her minor son, T.N.B., ("Claimant"), under Title XVI of the Social Security Act on November 8, 2016, with an alleged disability onset date of October 1, 2009. *See* Dkt. No. 12 at 3. Plaintiff alleges that Claimant became disabled as of October 1, 2009, due to attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). Plaintiff's claim was initially denied, and

1

she requested a hearing before an administrative law judge ("ALJ").  *See id.*  A hearing was held on March 5, 2018, before ALJ David Romeo, who denied Plaintiff's application on May 9, 2019. Plaintiff filed a request for review by the Appeals Council which, on June 19, 2020, was denied, making the ALJ's decision the final determination of the Commissioner.  *See id.* at 4.  Plaintiff filed her complaint in this Court on August 21, 2020.  *See* Dkt. No. 1 at 2.

## II. BACKGROUND

### A. Educational Records

On March 17, 2016, Claimant's seventh-grade teacher, Tim Fish, completed a Vanderbilt Assessment Scale.  *See* Dkt. No. 11 at 411-12.  He wrote that in "the 6 to 7 weeks I have had [Claimant] as a student he has completed little to no work and practices avoidance behaviors during instruction.  [H]e does not pay attention and he only works when I am directly working with him one on one or in a small group." *Id.*  Mr. Fish circled "very often" for the following categories: i) fails to give attention to details or makes careless mistakes in schoolwork, ii) has difficulty sustaining attention to tasks or activities, iii) avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort, and iv) is easily distracted by extraneous stimuli.  *Id.* at 411.  Mr. Fish also opined that Claimant's abilities to follow directions, complete assignments, and his organizational skills were "problematic." *Id.* at 412.

On March 29, 2016, Claimant's seventh-grade teacher, David Downing, completed a Vanderbilt Assessment Scale.  *Id.* at 413-14.  He wrote, "[Claimant] is very hard to understand sometimes due to his zoning out at what seems to be all the time." *Id.* at 414.  Mr. Downing circled "very often" for the following categories: Claimant i) fails to give attention to details or makes careless mistakes in schoolwork, ii) has difficulty sustaining attention to tasks or activities, iii) does not seem to listen when spoken to directly, iv) avoids, dislikes, or is reluctant to engage

in tasks that require sustained mental effort, v) loses things necessary for tasks or activities (school assignments, pencils, or books), vi) is easily distracted by extraneous stimuli, vii) leaves seat in classroom or in other situations in which remaining seated is expected, viii) actively defies or refuses to comply with adults' requests or rules, ix) is afraid to try new things for fear of making mistakes, and x) is sad, unhappy, or depressed. *See id.* at 413-14.  In his Vanderbilt Assessment Mr. Downing also mentioned that Claimant had difficulty organizing tasks and activities, talked excessively, and lost his temper. *See id.*  He also found that Claimant's performance in reading, written expression, ability to follow directions, complete assignments, organize, and not disrupt class were "problematic," and his performance in mathematics was "somewhat of a problem." *Id.*

On an unknown date Claimant's teacher, Mr. Clayton, filled out a Vanderbilt Assessment Scale. *See id.* at 416-17.  Mr. Clayton indicated that Claimant "often" i) fails to give attention to detail or makes careless mistakes in schoolwork, ii) has difficulty sustaining attention to tasks or activities, iii) does not seem to listen when spoken to directly, iv) avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort, v) is easily distracted by extraneous stimuli, and vi) talks excessively. *See id.*  Mr. Clayton also stated that Claimant's performance in reading and written expression were "average," his ability to complete assignments, organize, and not disrupt the class were "average," and his performance in mathematics and ability to follow directions were "somewhat of a problem." *See id.* at 417.

Claimant's other seventh-grade teachers, Lisa Hull and S. Vendetti, also filled out Vanderbilt Assessment Scales and made similar findings to Claimant's other teachers. *See id.* at 406-10.

On October 3, 2016, Syracuse City School District instituted a 504 Accommodation Plan for Claimant which provided for refocusing, checking in and out, class notes, special seating near the teacher, repeated directions, and positive reinforcement. *See id.* at 483-84. On October 13, 2016, Syracuse City School District identified Claimant as in need of Academic Intervention Services ("AIS") for mathematics and English language arts. *See id.* at 192. The services that were offered to Claimant included daily computer assisted instruction, an assigned extra AIS period, and an extended period of instruction. *Id.*

On December 20, 2016, after knowing Claimant for approximately four months, Claimant's eighth-grade teacher, Michele Pedretti, completed a Teacher Questionnaire from the New York State Office of Temporary and Disability Assistance. *See id.* at 221-28. Ms. Pedretti stated that Claimant was reading at a sixth-grade level and performed his mathematics at a fifth-grade level. *See id.* at 221. She also wrote that Claimant was on a 504 plan, he was often tardy, needed to participate more in class, and had an obvious problem providing organized oral explanations and adequate descriptions in class. *See id.* at 221-22. Under the "acquiring and using information" section Ms. Pedretti stated that "[Claimant] doesn't always start his class work when told. He often needs several prompts to get him going. He will follow through if teacher stays on him." *Id.* at 222. Regarding attending and completing tasks, Ms. Pedretti noted that Claimant has an obvious problem organizing his own things or school materials and working without distracting himself. *See id.* at 223. She did not note any issues under the "interacting and relating with others" category. *See id.* at 224-25.

On November 9, 2018, Claimant's tenth-grade teacher, Helen Kemper, completed a teacher questionnaire. *See id.* at 262-68. She opined that Claimant could read, write, and perform mathematics at a tenth-grade level and that Claimant had no problems acquiring and using

4

information, interacting and relating to others, moving about and manipulating objects, caring for himself, or any issues with his physical well-being. *See id.* Ms. Kemper did note that Claimant had problems attending and completing tasks. *See id.* at 263-64. She wrote that "[Claimant] has a difficult time staying on task. [He] can easily be distracted and talks with others. [Claimant] gets extra time to take tests and quizzes." *Id.* at 264.

On November 13, 2018, Claimant's ninth-grade teacher, Kelley Firsch, completed a teacher questionnaire. *See id.* at 269-75. On the questionnaire Ms. Firsch checked that Claimant had a problem acquiring and using information and she noted that he had an obvious problem expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. *See id.* at 269-70. She also opined that Claimant had a problem attending and completing tasks, and he had a serious problem or a very serious problem organizing his own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. *See id.* at 270. Ms. Fischer noted that "[Claimant] would benefit from having an aid seated next to him all day. He is not productive in or out of class, and I don't see him successfully completing this course without significant help (all day)." *See id.* at 271. She also noted that Claimant had a problem interacting and relating with others and that he had a serious problem using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation." *Id.* Ms. Fischer did not find that Claimant had any problems moving about and manipulating objects, caring for himself, or with his health or physical well-being. *See id.* at 272-73.

5

Claimant's other ninth-grade teachers, Corey Riley, Nancy Gorman, and Amy Bolognino, and an unknown teacher, also filled out teacher questionnaires and made similar findings to ones mentioned above. *See id.* at 276-96, 395-401.

**B.    Disciplinary Records**

Included in the record is Claimant's disciplinary history at school. *See* Dkt. No. 11 at 313-44. Some of these incidents include choking a student, biting a student, punching multiple students, fighting, threatening to stab a student, verbally threatening a student, threatening teachers, theft, and striking other students. *See id.* Claimant's attendance records, including absences, late arrival, and suspensions are also included. *See id.* at 345-75.

**C.    Medical Records**

On May 10, 2012, Claimant saw Lindsay A. Dudeck, M.D., at Upstate University Health System for "back swelling" and she mentioned his "history of ADHD." *See id.* at 424.

On January 23, 2013, Claimant saw pediatrician Nellie Sadaghiani, M.D. for a follow up concerning his ADHD. *See id.* at 427. Dr. Sadaghiani also mentioned Claimant's prior diagnosis of ODD. *See id.* The progress notes mentioned that Claimant had stopped taking Concerta in the middle of the previous school year because Plaintiff felt that he was behaving well at home, but at the time of the report Claimant was getting in trouble at school every day. *See id.* The report says that Plaintiff wanted to get Claimant back into the school psychiatrist for his anger issues and he had begun taking Concerta again a week before the appointment. *See id.*

On May 7, 2013, Claimant saw Dr. Sadaghiani again for a follow up appointment regarding his medication, his ADHD, and his ODD. *See id.* at 429. Claimant's father reported that Claimant was no longer getting into fights in school and his grades were better. *See id.* Dr.

Sadaghiani suggested that Claimant continue taking Concerta over the summer break but told Claimant and his father that it was their decision. *See id.*

On October 15, 2013, Claimant and his father returned to Dr. Sadaghiani's office and reported that Claimant had decided not to take Concerta over the summer. *See id.* at 431. Claimant's father said he was doing his schoolwork, but he did get into two fights in school the week before the appointment and got suspended. *See id.* Claimant expressed a desire to return to anger management and Dr. Sadaghiani requested Vanderbilt forms to determine whether medication was needed. *See id.*

On May 27, 2014, Claimant and Plaintiff returned to Dr. Sadaghiani's office. *See id.* at 437. Plaintiff reported that Claimant was acting aggressively, was suspended for getting in fights at school, and had poor sleep habits. *See id.* Dr. Sadaghiani again asked for Vanderbilt forms which she had not received so she could decide if Claimant needed medication and he advised that Claimant return to therapy. *See id.* at 437.

On December 2, 2014, Claimant saw pediatrician Karen White, M.D. for back pain. *See id.* at 438. Dr. White described multiple behavioral concerns including problems sleeping and aggressive behavior. *See id.* She also noted that Claimant had not been seeing a private therapist or taking his medication, but he had been talking to the school counselor when he was sent out of the classroom for behavioral problems. *See id.* In the Claimant's progress notes, Dr. White wrote that Claimant was only reading at a third-grade level even though he was in sixth grade, the doctor's office still had not received Vanderbilt forms, but Claimant did work well when he was promised a reward. *See id.* at 439.

On March 1, 2016, Plaintiff and Claimant returned to Dr. White's office. *See id.* at 442. Plaintiff told Dr. White that Claimant stopped taking Concerta and she did not enroll Claimant in

counseling because she did not think it would be beneficial, but that Claimant was still struggling in school. *See id.* Dr. White also noted that she still did not see any Vanderbilt forms on record. *See id.*

Plaintiff and Claimant returned to Dr. White's office on April 12, 2016, with completed Vanderbilt forms that scored Claimant as positive for ADHD, inattentive type. *See id.* at 446. Plaintiff asked Dr. White to increase Claimant's dose of Concerta and Claimant agreed to try a higher dose, so Dr. White prescribed one. *See id.* at 448. Dr. White noted that Claimant did not meet the criteria for ODD, anxiety, or depression, and she suggested that Claimant try counseling and psychoeducational testing. *See id.*

On June 7, 2018, Claimant saw Joshua Kanji, M.D. and John Andrake, M.D. *See id.* at 457-59. It was noted that Claimant had stopped taking Concerta because he did not like it and he was failing all of his classes. *See id.* When Claimant was asked why he was failing in school he said he was not putting in the effort, he could not stay focused on his homework, and he has problems with organization. *See id.* The doctors provided Claimant's father with more Vanderbilt forms to have filled out so they could evaluate Claimant for medication. *See id.*

On February 5, 2019, Claimant returned to Dr. Kanji's office for an ADHD follow-up evaluation. *See id.* at 489-90. Claimant's parents asked Dr. Kanji to make sure his paperwork was filled out for Claimant's disability hearing. *See id.*

**D.     Opinion Evidence**

On January 18, 2017, Corey Anne Grassl, Psy. D. performed a psychological consultative examination of Claimant. *See id.* at 452-55. She noted that Claimant was in a regular education setting with a 504 plan due to ADHD and that he was prescribed Concerta. *See id.* In the report Dr. Grassl wrote, "ADHD symptoms even with the Concerta include failing to pay attention to

detail, making careless mistakes, difficulty sustaining attention on tasks or play" and she noted that Claimant has a cooperative demeanor, but with a poor manner of relating. *See id.* at 452. Dr. Grassl opined that Claimant was "moderately limited in his ability to attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, ask questions and request assistance in an age-appropriate manner, and interact adequately with adults." *See id.* at 454. She did say however that Claimant can take care of himself at an age-appropriate level and that he has no limitation in his ability to interact with peers, he has friends, and a good relationship with his mother. *See id.* Dr. Grassl diagnosed Claimant with ADHD and ODD and suggested that Claimant be evaluated by the Board of Education for alternative educational placement and have a reevaluation of a psychiatric intervention. *See id.*

On March 26, 2019, Dr. Kanji completed a Medical Source Statement in which he noted that Claimant met the DSM-V criteria for inattentive ADHD based solely on the Vanderbilt forms completed by Claimant's parents and two teachers. *See id.* at 495-99. He also wrote that Claimant was having problems with attention, preparation and tasks at school without medication. *See id.*

### III. DISCUSSION

**A.    Standard of Review**

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

> Regulations enacted by the Social Security Administration set forth a three-step analysis for evaluating whether a child's impairment meets this definition of disability: First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* § 416.924(c)-(d).

*Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 386 (2d Cir. 2010) (quotation omitted).

Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve-month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas, which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those prescribed domains include:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for [oneself]; and

    (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

    A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains.  20 C.F.R. § 416.926a(a).  Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations."  20 C.F.R. § 416.926a(e)(3)(i); *see also Pollard*, 377 F.3d at 190.

    In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

    If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

11

1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.    The ALJ's Decision**

Using the three-step disability evaluation, the ALJ found at step one that Claimant has not engaged in any substantial gainful activity since November 8, 2016. *See* Dkt. No. 11 at 27. At step two, the ALJ concluded that Claimant has a severe impairment consisting of ADHD. The ALJ further noted that while Claimant has been medically managed for ODD, he found that there is not enough documentation to show that it rises to the level of a severe impairment. *See id.* The ALJ did however continue to consider the limiting effects of Claimant's ODD in determining whether Claimant would receive SSI benefits. *See id.* At the third step of analysis, the ALJ found that Claimant's severe impairment did not meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations. *See id.* The ALJ evaluated Claimant's functional abilities in the six domains established by 20 C.F.R. § 416.926a and found that Claimant's limitations were "marked" in attending and completing tasks, "less than marked" in acquiring and using information and interacting and relating to others and that he had "no limitations" in moving about and manipulating objects, caring for himself, and in his health and physical well-being. *See id.* at 30-37. Consequently, the ALJ concluded that Claimant was not disabled. *See id.* at 37.

**C.    Plaintiff's Arguments**

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that: (1) the ALJ erred when he failed to duly consider Claimant's ODD as a severe impairment; (2) the ALJ erred when he failed to find that Claimant has a marked limitation as to interacting and relating with others; and (3) the ALJ erred when he failed to find that Claimant has a marked limitation as to acquiring and using information. *See* Dkt. No. 12.

**D.     Claimant's Oppositional Defense Disorder**

The ALJ stated that Claimant's diagnosis of ODD was briefly mentioned in the record, but there was not enough documentation to show that it rose to the level of severe impairment. *See* Dkt. No. 11 at 27. The ALJ reviewed Claimant's academic and medical records and concluded that, "[t]he longitudinal medical evidence in the record indicates that [ODD] does not impose limits in the claimant's ability to engage in basic childhood activities." *See id.* The Court finds that the ALJ did a proper step-two analysis and his determination that Claimant's ODD was not a severe impairment is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Court notes that Plaintiff maintains that Claimant's ODD is severe and cites to multiple notations of the ODD diagnosis in the record. *See* Dkt. No. 12 at 17 (citing Tr. 424, 426, 429, 431, 437 & 441). Most of the notations indicating a diagnosis of ODD are well before the relevant period under review and, even if they were not, the mere diagnosis of ODD does not establish the severity of the impairment. *See Orton v. Astrue*, No. 7:11-cv-630, 2013 WL 3328025, *9 (N.D.N.Y. July 2, 2013) (finding that the plaintiff failed to present evidence establishing the severity of his PTSD where he only offered two diagnoses to prove the severity); *Luciano v. Comm'r of Soc. Sec.*, No. 16-cv-5963, 2017 WL 4326078, *8 (S.D.N.Y. Sept. 28, 2017) ("And, of course, 'mere diagnosis ... says nothing about the severity of the condition'")

(quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). And while it is true that Dr. Grassl noted a diagnosis of ODD, she also noted that Claimant was only mildly limited in his ability to maintain appropriate social behavior, and not limited at all in his ability to interact adequately with peers. *See* Dkt. No. 11 at 454. While she did opine on moderate limitations in his ability to ask questions and request assistance in an age-appropriate manner, and interact with adults, she found him cooperative during her examination, *see id.* at 453-54, and his recent teachers did not report any such limitations in these areas. *See id.* at 264, 271, 278, 285, 292, 397.

Finally, the Court finds that, even if Plaintiff had met its burden in demonstrating that Claimant's ODD was a severe impairment, any error by the ALJ was harmless because the ALJ continued with the sequential analysis and considered Claimant's ODD when assessing his overall limitations. *See Jordan ex rel. M.E.J. v. Colvin*, No. 8:12-cv-1450, 2013 WL 6506566, *5 (N.D.N.Y. Dec. 12, 2013). Accordingly, the Court affirms this aspect of the ALJ's decision.

**E.     Interacting and Relating to Others**

Plaintiff argues that the ALJ erred when he failed to find that Claimant has a marked limitation as to interacting and relating with others. *See* Dkt. No. 12 at 16-18. She claims that the ALJ did not properly consider Claimant's academic and medical reports and that both teachers and doctors have noted that Claimant has an issue interacting with others. *See id.* The Commissioner argues that Plaintiff is asking the Court to reweigh the evidence which the Court cannot do, and even if the Court could, the ALJ's decision was based on relevant evidence that a reasonable mind may find supports its conclusion so it should not be overturned. *See* Dkt. No. 17 at 10-14.

The Court agrees with the Commissioner that it is not the Court's job to reweigh the conflicting evidence and the ALJ's decision was supported by substantial evidence. *See Schaal*,

134 F.3d at 504. The ALJ looked at recent teacher reports and noted that many of them indicate very little in the way of interactive problems with teachers or other students and specifically stated that Claimant's current teacher Bolognino noted Claimant had "no problems" in interacting and relating with others. *See* Dkt. No. 11 at 34. This evidence, along with the opinions of the agency and consultative psychologists suggest that the ALJ's decision was based on substantial evidence and therefore must not be overturned. *See id.* at 452-55, 495-99.

F.      **Acquiring and Using Information**

Plaintiff also argues that the ALJ erred when he failed to find that Claimant has a marked limitation as to acquiring and using information. *See* Dkt. No. 12 at 18-20. The Commissioner again argues that it is not the Court's job to find the facts or reweigh the evidence and that the ALJ produced substantial evidence to support his decision. *See* Dkt. No. 17 at 15-19. The Court finds that the ALJ looked at Claimant's recent school reports and reasonably determined that Claimant did not have a marked limitation in acquiring and using information. *See* Dkt. No. 11 at 30-32.

When assessing the domain of interacting and relating with others, the ALJ stated the following:

> The claimant has tended to have poor grades, and apparently, and according to the mother's testimony, had to repeat 9th grade on this basis. However, this does appear now to be grounded in the attentional and other ADHD features in the case, since the record indicates general good average intelligence. This was assessed by Dr. Grassl, (Exhibit 3F) and is also indicated in reports from treating medical sources and by the teachers who have now reported into this record. When the claimant was in 7th grade, a number of his then teachers completed detailed student function analyses, in most cases indicating rather serious difficulties with paying attention and getting assigned work done properly. (See Exhibit lF.) Interestingly, though, one report, that of teacher Clayton, found less severe problems academically, though in terms of personality the teacher noted that "student is very passive." (Exhibit lF, pages 11-12)

15

> More recent school reports, from this year during his 10th grade studies, indicate improvement overall, and particularly note good intelligence and ability to understand and comprehend the assigned materials. The claimant is in 10th grade classes in reading, math, and writing. (Exhibits16E, page l; 18E, page 1) There are no problems in acquiring and using information. (Exhibit 16E, page 1) Teacher Frisch notes some problems with retention of learned material but not of a serious nature. (Exhibit l 7E, pages 1-2) Teacher Gorman, the math teacher, reported similarly, again without changing the overall profile of the student in question. (Exhibit 19E, pages 1-2)

Dkt. No. 11 at 31-32.

The ALJ's finding in this domain is supported by the opinion of Dr. Grassl, who found Claimant to have average intellectual functioning, age-appropriate general fund of information, and intact memory with cognitive problems that do "not appear to be sufficient enough to interfere with the claimant's ability to function on a daily basis," and the opinion of Dr. Lieber-Diaz, who opined on less than marked limitations in this domain. *See id.* at 30, 81, 453-54. Such reliance was especially appropriate here because these were the only psychological experts of record who assessed whether Claimant's impairments met or equaled a Listing. *See Frye ex rel. A.O.*, 485 Fed. Appx. at 487 (holding that "it was appropriate for the ALJ to rely on the [State agency] report, as the State agency psychiatrist was the only expert of record who specifically assessed whether A.O.'s impairments met or equaled a listed impairment"). Moreover, as the ALJ correctly noted, the treating providers in the record did not report any deficits in this domain, but rather reported problems related to concentration and focus. *See* Dkt. No. 11 at 31, 458-59.

The ALJ also relied on the reports of current teachers; most of whom noted that Claimant did not have any serious problems in this domain. *See id.* at 31-232, 262-63, 269-70, 276-77, 290-94, 395-96. While one teacher, Claimant's math teacher, Nancy Gorman, noted that Claimant

16

had some serious problems in this domain, specifically noting that Claimant was missing/lacking basic math skills from previous years, *see id.* at 283, she only noted obvious, not serious, problems in understanding school and content vocabulary, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and expressing ideas in written form. *See id.* at 283-84. Indeed, Ms. Gorman noted that Claimant knows what he should do during class—have homework done, get calculator and pencil out, and focus on his work—but does not carry those things out. *See id.* at 288. Claimant himself reported that he was failing at school because he does not put forth effort and does not stay focused on task; not due to any lack of understanding. *See id.* at 458. The ALJ was free to afford Ms. Gorman's report less weight where it was not consistent with the majority of other opinions in the record indicating that there were no serious problems in this domain. *See Ryan B. o/b/o E.K.G. v. Comm'r of Soc. Sec.*, No. 19-cv-1408, 2021 WL 856907, *6 (W.D.N.Y. Mar. 8, 2021).

Since there was substantial evidence to support the ALJ's finding that Claimant had a less than marked limitation in the domain of acquiring and using information, it must be affirmed. *See Davila-Marrero v. Apfel*, 4 Fed. Appx. 45, 46 (2d Cir. 2001).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 20, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge